Westlaw.



**H**
Jones v. Dovery
S.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
William J. JONES, Plaintiff,
v.
John DOVERY, G.T. Janda, L.E. Scribner, M.D. Bourland, M. Levin, M. Correa, L.C. Orduno, D. Sawtell, J. Kellerman, Madden, T. Ochoa, Kilpa, Zendejas, and V. Bach, Defendants.
**No. 06cv1979-LAB (AJB).**
**Docket Nos. 28, 40, 41.**

March 18, 2008.

William J. Jones, Delano, CA, pro se.
Attorney General, State of California Office of the Attorney General, San Diego, CA, Tiffany R. Hixson, Attorney General's Office, San Diego, CA, for Defendants.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

LARRY ALAN BURNS, District Judge.
*1 Plaintiff, a prisoner proceeding *pro se,* seeks relief under 42 U.S.C. § 1983 for alleged deprivations of his Constitutional right to be free from deliberate indifference to serious medical needs, his right of access to the courts, and his Fourteenth Amendment right to due process of law. Those Defendants who had been served [FN1] moved under Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint, and requested judicial notice of certain documents in connection with state court proceedings. Pursuant to 28 U.S.C. § 636 and Civil Local Rule 72.1(d), this matter was referred to Magistrate Judge Anthony J. Battaglia.

FN1. Defendants Dovery, Sawtell, Kilpa, and Zendejas were dismissed on February 22, 2008 after Plaintiff failed to serve them.

In response to Defendants' motion to dismiss, Plaintiff filed a motion to quash, which Judge Battaglia construed as Plaintiff's opposition to the motion to dismiss. The Court construes the motion to quash in the same manner. In connection with his motion to quash, Plaintiff requested the Court take judicial notice of various records.

On February 14, 2006, Judge Battaglia issued his report and recommendation (the "R & R"), recommending Defendants' motion to dismiss be granted as to Defendants Levin, Bach, Ochoa, Madden, Janda, Scribner, and Kellerman, and Granted as to all Plaintiff's due process and denial of access to courts claims, but denied as to medical claims against Defendants Orduno and Correa. The R & R also recommended Defendants' request for judicial notice be granted as to Exhibit 3 only, and Plaintiff's request be granted as to exhibits 2, 3, 4, 7, 8, 9, 10, and 11 only.

**I. Legal Standards**

The R & R notified the parties of their right to object, and informed them that failure to object within the time permitted might waive their appellate rights. (R & R at 22:1-4.) A district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed.R.Civ.P. 72(b); *see also*28 U.S.C. § 636(b)(1). A party objecting to the recommended disposition of the matter may "serve and file specific objections to the proposed findings and recommendations," and "a party may respond to another party's objections."Rule 72(b)."[T]he court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."28 U.S.C. § 636(b)(1).*United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc) ("The statute

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT 4

makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made,* but not otherwise.")

**II. Objections to the R & R**

The Court has reviewed the R & R and finds its recommendations to be correct, except with respect to the standard for motions to dismiss. The R & R cited the "no set of facts" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court modifies this to rely on the standard set forth in *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). This modification does not alter the R & R's analysis, however.

*2 Defendants filed no objections. Plaintiff made only two objections. He objected to the recommendations regarding his access to courts claim (P.'s Obj. to R & R at 3:1-4:14) and also made an unclear objection to either the grant of Defendant's request for judicial notice of Exhibit 3, or the denial of one of his requests for judicial notice, or both. (*Id.* at 4:24-5:14.)

**A. Access to Courts Claim**

The R & R cited *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) for the principle that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."The R & R correctly noted the limitations on this holding set forth in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), which explained the role of courts is to provide relief to claimants who have suffered, or will imminently suffer, actual harm. *Lewis* at 349.As the R & R correctly noted, *Lewis* held actual injury will exist only if "a nonfrivolous legal claim had been frustrated or was being impeded."*Id.* at 353;*see also id.* at 353 n. 3. As the Supreme Court has explained, *Bounds* did not create an abstract, freestanding right to a law library or legal assistance whose violation would be actionable. *Id.* at 351.Rather, a plaintiff bringing a claim under § 1983 for violation of this right must show actual injury. *Id.* at 351-52.

The R & R correctly pointed out that, in order to successfully state a claim for denial of access to courts, Plaintiff needed to allege a specific instance in which he was denied the tools he needed to litigate in a non-frivolous criminal trial, criminal appeal, habeas proceeding, or § 1983 case challenging the conditions of his confinement. (R & R at 14:6-9 (citing *Lewis at 355; Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989).)

Plaintiff points to one of his allegations stating:

> As a proximate result of the Defendants['] conduct[,] Plaintiff has suffered and continues to suffer general damages in the form of emotional and psychological stress. Plaintiff is informed and believes and thereon alleges that Plaintiff will suffer such damages in the future "Anti-Terrorist Act."

(P.'s Obj. to R & R at 3:4-10 (citing Am. Compl., ¶ 60).) Plaintiff's objections explain that what he meant was that the denial of his right of access to an adequate law library was preventing him or had prevented him from filing a state habeas action early enough to remain within the one-year limitations period. (*Id.* at 3:11-14.)He does not allege what claim he would have brought, though. He also alleges generally that he was unable to file unspecified papers in connection with his state habeas petition (*id.* at 3:16-22), and was prevented from objecting to a report and recommendation in a separate civil action he filed in the Central District of California, *Jones v. Ventura County Sheriff's Dep't.,* 03cv6151-DDP (AJW).

*3 The Court has reviewed the amended complaint and agrees with the R & R that Plaintiff never al-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

leged any injury in fact. Rather, the amended complaint merely alleges Plaintiff informed certain Defendants he was being denied access to courts, mentions legal actions he was bringing, and makes generalized references to inability to prepare or file legal papers on time. Plaintiff is required to describe the non-frivolous nature of his cause of action, whether anticipated or lost, as well as the official actions that are frustrating or have frustrated his legal efforts. *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). His allegations must establish actual injury he either has already suffered or will imminently suffer.*Lewis,* 518 U.S. at 349. The Court agrees the amended complaint fails to make any such allegations. Plaintiff must make these allegations himself; the Court cannot do so for him. *Ivey v. Bd. of Regents of the University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). This objection is therefore **OVERRULED.**

**B. Judicial Notice**

Plaintiff makes an unclear objection regarding the R & R's recommended rulings on the requests for judicial notice. (P.'s Obj. to R & R at 4:24-5:12.) Plaintiff mentions the documents Defendants ask the Court to take notice of, then states "What [Defendants'] counsel failed to present [was] that on 10-25-2006 Jones (William J.) on H.C. is also there. Then on 4-25-2007 this was also denied." (*Id.* at 4:24-5:3.)The Court construes this as arguing that Defendants have failed to seek judicial notice of an additional petition for habeas corpus that was denied on April 25,2007.

Plaintiff goes on to argue it would be unfair to grant Defendants' request without also taking judicial notice of the additional matter he mentions. (P.'s Obj. to R & R at 5:5-7.) It is unclear what Plaintiff means by this. Plaintiff requested judicial notice of several documents relating to his access to courts and due process claims, all of which the R & R recommended granting. The R & R only recommended denying Plaintiff's request for judicial notice of two documents relating to his medical condition, and a letter from an attorney suggesting if he missed court deadlines because his legal property had not been returned to him, he should file a "602" inmate appeal. The R & R only recommended taking notice of one of the documents Defendants proffered, the docket in *People v. Jones,* Case no. B174392 (Cal.App. 2 Dist.), Plaintiff's direct appeal from his conviction, which was opened on April 12, 2004 and closed on April 5, 2005, well before the dates he mentions. The Court believes this objection may be based on a mistaken reading of the R & R.

Because it does not appear this objection has anything to do with the R & R's actual recommended rulings on the requests for judicial notice, this objection is **OVERRULED AS MOOT.**

Plaintiff makes two more brief objections in the same paragraph. First, he argues the Court ought to take into consideration the role of Defendants Ochoa, Janda, Scribner, and Kellerman, before whom he says he brought his claims, as "policy heads" under *Trevino v. Gates,* 99 F.3d 911-18 (9th Cir.1986). (P.'s Obj. to R & R at 5:7-10.) The Court construes this as arguing the R & R failed to recognize the possibility these Defendants might be vicariously liable for denying him access to courts. The R & R recognized this possibility, however, and addressed it. (R & R at 10:5-11:13.) If Plaintiff believed he had adequately shown a basis for vicarious liability, he has not cited nothing from his amended complaint to support his contention.

*4 Second, in the same sentence Plaintiff argues granting Defendants' request for judicial notice would violate Fed.R.Evid. 201(b). Defendants offered Exhibit 3 for the sole purpose of showing Plaintiff was represented by counsel in the case to which the docket relates. (R & R at 20:18-20.) Plaintiff admits he was represented by counsel in this case. (P.'s Obj. to R & R at 4:15-19.) Even if the R & R were incorrect in its recommendation that the Court take notice of this public record of a judicial proceeding, Plaintiff's objection would be

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

moot. Both objections are therefore **OVERRULED.**

**III. Opportunity to Amend**

"Unless it is absolutely clear that no amendment can cure the defect ..., a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."*Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir.1995); *see also Lopez v. Smith,* 203 F.3d 1122, 1126 (9th Cir.2000) (en banc).

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, the Court conducted a screening of Plaintiff's original complaint. In its order issued November 15, 2006 (the "Screening Order"), the Court informed Plaintiff of the deficiencies in his complaint, which it then dismissed without prejudice, and with leave to amend.

The Screening Order gave Plaintiff specific notice of the requirements for pleading a claim for denial of access to courts, and explained the deficiencies in Plaintiff's complaint. (Screening Order at 4:20-5:26.) The Screening Order also advised Plaintiff his due process claim was inadequate because he had failed to plead facts showing he had a liberty interest in remaining free from administrative segregation. (*Id.* at 6:2-7:10.)The R & R found the amended complaint again failed to plead such facts, a finding to which Plaintiff did not object. (R & R at 16:7-27.) The Screening Order informed Plaintiff he had failed to allege Defendants' involvement in denial of medical care, and notified him of the standards for pleading facts to show both direct liability and supervisory liability. (Screening Order at 7:12-8:28.) The R & R also found that, except for Defendants Orduno and Correa, Plaintiff had failed to plead facts showing Defendants' involvement in depriving him of adequate medical care or being deliberately indifferent to his serious medical needs. (R & R at 10:14-11:13.) Plaintiff has not objected to this finding.

Because Plaintiff has been informed of the deficiencies in his complaint, has been given an opportunity to cure them, and (except with respect to claims against Defendants Orduno and Correa) has failed to do so, Plaintiff will not be given leave to amend his complaint further.

**III. Conclusion and Order**

For these reasons, the Court **ADOPTS** the R & R as modified, and **ORDERS** as follows:

Plaintiff's motion to quash Defendants' motion to dismiss is **DENIED** and is construed as an opposition to the motion to dismiss.

***5** Because the amended complaint fails to state a claim against Defendants Levin, Bach, Ochoa, Madden, Janda, Scribner, and Kellerman, Defendants' motion to dismiss is **GRANTED,** and claims against these Defendants are **DISMISSED WITH PREJUDICE.**

Because the amended complaint fails to state a claim for denial of Plaintiff's rights to due process of law and access to courts, these claims are **DENIED WITH PREJUDICE.**

Defendants' request for judicial notice is **GRANTED** as to Exhibit 3 but **DENIED** as to Exhibits 1 and 2.

Plaintiff's request for judicial notice is **GRANTED** as to Exhibits 2, 3, 4, 7, 8, 9, 10, and 11 but **DENIED** as to all other exhibits.

**IT IS SO ORDERED.**

Report and Recommendation Granting Defendants' Motion to Dismiss and Denying Plaintiff's Motion to Quash and Request for Judicial Notice [Doc. Nos. 28, 40 and 41]

ANTHONY J. BATTAGLIA, United States Magistrate Judge.
Plaintiff William J. Jones, a state prisoner proceed-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

ing pro se, filed this action under 42 U.S.C. § 1983 against fourteen named defendants seeking compensatory and punitive damages and injunctive relief alleging claims of deliberate indifference to his medical needs, denial of his right to access the courts, and violation of his right to due process under the Fourteenth Amendment. Defendants, V. Bach, M. Correa, G. Janda, J. Kellerman, M. Levin, M .D., T. Ochoa, Madden, E. Orduno, and L. Scribner have filed a motion to dismiss Plaintiff's First Amended Complaint [FN1] ("FAC") based on the grounds that (1) Defendants cannot be sued in their official capacity; (2) Plaintiff fails to state a claim; and (3) Defendants are entitled to qualified immunity, and have also filed a request for judicial notice. Plaintiff has filed an opposition and Defendants have filed a reply. In addition, Plaintiff has filed a motion to quash Defendants' motion to dismiss, as well as a request for judicial notice.

FN1. The County of San Diego has not moved for summary judgment.

Pursuant to Local Civil Rule 72.3(f), each of these motions have been referred to Magistrate Judge Battaglia for hearing and the issuance of a Report and Recommendation ("R & R"). These motions are appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). For the reasons set forth herein, the Court hereby recommends that Defendants' motion to dismiss be GRANTED as to Defendants Levin, Bach, Ochoa, Madden, Janda, Scribner, and Kellerman, and GRANTED as to Plaintiff's due process and access to courts claims, but DENIED as to Defendants Oduno and Correa. Defendants Kilpa, Zendejas, Sawvell and Dovery have not been served in this matter and were not parties to the motion to dismiss. The Court recommends that Plaintiff's motion to quash Defendants' motion to dismiss be DENIED and the Court instead construes this motion as an opposition to the motion to dismiss. The Court recommends Defendants request for judicial notice be GRANTED as to Exhibit 3 and DENIED as to Exhibits 1 and 2 and that Plaintiff's request for judicial notice be GRANTED as to Exhibits 2, 3, 4, 7, 8, 9, 10 and 11 and DENIED as to all other exhibits.

***Summary ofPlaintiff's Allegations***

*6 Plaintiff names fourteen defendants: John Dovery, M. Levin, M. Correa, D. Sawvell, L.C. Orduno, V. Kilpa, M. Zendejas, M.E. Bourland, L.E. Scribener, G.T. Janda, T. Ochoa, Madden, J. Kellerman, and V. Bach as defendants. Plaintiff alleges claims of deliberate indifference to his medical needs, denial of his right to access the courts, and violation of his right to due process.

Plaintiff alleges that defendants were deliberately indifferent to his medical needs by failing to properly treat his knee condition and depriving him of medical appliances, medication, and proper therapy. (Compl.¶¶ 1-42.) Plaintiff underwent knee surgery on October 4, 2005, and was later transported back to Calipatria State Prison where he states that he was denied medical care.(*Id.* ¶ 16-18.)On October 8, 2005, Plaintiff states that he was ordered by Defendant Sawvell to walk to the tray slot to be handcuffed so that she, Medical Technical Assistant Salazar, and Correction Officer McCollum could enter the cell to check Plaintiff's vitals. Plaintiff states that he had his face in the tray slot and was telling Defendant Sawvell that he could not walk as a result of his recent surgery, when Defendant Sawvell asked him if he was going to walk to the tray slot to be handcuffed or not and then slammed the tray slot in Plaintiff's face and walked away, thereby denying Plaintiff medical treatment on October 8, 2005. (*Id.* ¶ 17.)

On October 10, 2005, Plaintiff states that he had a temperature, headache and swelling of his leg that was in a full length cast. Plaintiff states that he pushed the call button and that Defendant Sawvell came to his cell. Plaintiff requested ice and Tylenol, however Plaintiff states that his next dose of Tylenol was not due for another hour. Plaintiff contends that Defendant Sawvell's refusal to provide the ice

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

and Tylenol was a denial of medical care. (*Id.* ¶ 18.)

Plaintiff also claims that he was denied the use of medical appliances.(*Id.* ¶¶ 20-29.)Plaintiff states that on December 9, 2005, Defendant Orduno went to Plaintiff's cell in administrative segregation and demanded Plaintiff's wheel chair because Plaintiff did not have a medical treatment order from a doctor prescribing the wheel chair. (*Id.* ¶ 20.)Plaintiff states that Dr. Chan agreed to provide Plaintiff a wheel chair upon his request, but that Defendant Orduno directed Dr. Chan not to provide the wheel chair. (*Id.* ¶¶ 21-22.)Plaintiff states that on February 11, 2006, that Defendants' Orduno, Kilpa, and Kendejas deprived Plaintiff of crutches. (*Id.* ¶ 24.)Plaintiff also alleges that on January 28, 2006, that he had to address Defendant Orduno's superiors for Defendant Orduno's misconduct of falsifying medical documents and depriving Plaintiff of ordered medications. Plaintiff contends that Defendant Orduno continued to falsify Plaintiff's prescriptions, despite having been counseled by Defendant Levin, the Chief Medical Officer.

*7 On April 11, 2006, Plaintiff states that he was given a choice by Defendant Correa to leave the infirmary without medical appliances or be removed. (*Id.* ¶ 26.)Plaintiff states that he had a medical treatment order indicating he did need the medical appliances and requested that Defendant Correa provide him with a copy of it. Defendant Correa provided Plaintiff with a medical treatment order, however, Plaintiff states that the medical treatment order he was provided by Defendant Correa deleted 99.9% of his prescribed medical appliances.[FN2](*Id.* ¶ 29.)Plaintiff states that he made a request to Corrections Officer Vasquez to have a Lieutenant Commander present and that Vasquez honored his request and notified Lieutenant Commander Siota. Siota appeared and Plaintiff explained his request for a medical treatment order specifying that he did not need medical appliances Defendants Orduno and Correa were attempting to take away upon his departure from the infirmary. Plaintiff claims that the medical treatment order he was given from Defendant Correa was a forgery because it was missing required signatures and also claims that Defendant Orduno falsified Plaintiff's prescriptions and was counseled by Defendant Levin. (*Id.* ¶¶ 25 and 30.)Plaintiff states that he then left the infirmary without incident and without the prescribed medical appliances and was rehoused in Administrative Segregation where he was taunted and harassed by Medical Technical Assistant Defendant Figuroa.

> FN2. In Plaintiff's First Amended Complaint, Plaintiff had initially written 50% but then crossed out 50% and wrote 99%. Plaintiff's First Amended Complaint at 21.

Plaintiff contends that on May 8, 2006, he spoke with Defendant, Lt. Siota and provided him with evidence that Defendant Correa had falsified his medical treatment order. Plaintiff states that Lt. Siota responded by saying "take it up with the Ninth Circuit."

Plaintiff contends that Defendants actions in failing to provide medical treatment resulted in further significant injury, however, the injuries Plaintiff refers to are his patellar tendon allograph surgery, and his previous symptoms of his knee buckling and sever pain. (*Id.* ¶ 37.)Plaintiff states that Defendants' acts which deprived him of medical appliances and medications caused him emotional and psychological stress. (*Id.* ¶ 38.)Plaintiff also claims future damages in the form of medical expenses and loss of income.

Plaintiff alleges he was denied access to the courts as he was denied access to the law library and to his legal materials. Plaintiff was a pro se litigant in two cases during which he contends he was denied access to his legal materials. (*Id.* ¶¶ 44 and 46.)After Plaintiff received his legal materials, he claims he was still unable to go to the prison law library. Plaintiff states that he made requests to have access to the law library, but contends that they were repeatedly denied by Defendants Kellerman, Bourland and Madden. Plaintiff states that while in the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

infirmary, he informed Defendants Bourland, Scribbner, Janda and Ochoa that he was being denied access to the courts. (*Id.* ¶ 48.)Plaintiff also states that he informed the institutional classification committee ("ICC") at a hearing on October 14, 2005, that he needed his legal materials. Plaintiff states that it was only after his meeting with an attorney monitoring disabilities at the prison, that he was provided with his legal materials on December 18, 2005, but was still unable to go to the prison law library. (*Id.* ¶¶ 50-51.)

***8** Plaintiff states that on March 11, 2006, prior to another ICC hearing, that he asked Defendant Kellerman to advise the ICC that Plaintiff had been denied access to the courts, but Kellerman declined to do so. (*Id.* ¶ 53.)Plaintiff states that he also informed Defendants' Bourland and Madden that he was being denied access to the courts, but states that they failed to act.(*Id.* ¶ 54.)Plaintiff states that he was unable to object to the R & R that was issued by the Court and later adopted by the District Court on April 6, 2006. (*Id.* ¶ 55.)

Finally, Plaintiff alleges his rights to due process were violated when he was placed in administrative segregation due to possession of weapons. (*Id.* ¶¶ 63-89.)On February 22, 2006, Plaintiff states that he was informed by Defendant Kellerman that "headquarters" requested that Plaintiff be kept in administrative segregation beyond his maximum eligible release date as a result of Plaintiff's possession of weapons. (*Id.* ¶ 65 and 67.)Plaintiff contends that his retention in administrative segregation denied him necessary medical treatment. Plaintiff requested and received the memorandum from headquarters, but contends that it failed to meet the requirements necessary to retain Plaintiff in administrative segregation. (*Id.* ¶ 76.)

On March 11, 2006, Plaintiff states that at the ICC hearing he informed Defendant Janda that he had been denied access to the prison's law library, as well as his legal materials, which had caused him to miss legal deadlines with the court and that his continued retention in administrative segregation deprived him of medical care. (*Id.* ¶ 75.) was being denied his due process. Defendant Kellerman then brought Plaintiff the memorandum from headquarters. Plaintiff informed the ICC panel of his legal concerns but they were disregarded by Defendant Janda who told Plaintiff that he had the authority to retain him in administrative segregation.

On April 11, 2006, Plaintiff was removed from the infirmary and placed in administrative segregation where he was denied his property. (*Id.* ¶ 77.)At an ICC hearing on May 2, 2006, Plaintiff explained the memorandum he was provided from headquarters failed to meet the requirements to retain him in administrative segregation. (*Id.* ¶ 79.)Defendant Bourland told Plaintiff that the memorandum he was referring to was incomplete but would not provide the Plaintiff with a complete copy. (*Id.* ¶ 80.)Plaintiff was then transferred to Kern Valley State Prison on May 10, 2006. (*Id.* ¶ 81.)

***Discussion***

Plaintiff, proceeding pro se, initially filed his complaint in this Court on September 18, 2006.[FN3]Plaintiff filed his FAC in this Court on December 26, 2006.[FN4]Defendants L.E. Scribener, M. Levin, M. Correa, L.C. Orduno, J. Kellerman, Madden, T. Ochoa, V. Bach and G.T. Janda filed a motion to dismiss Plaintiff's FAC pursuant to Fed.R.Civ.P. 12(b)(6) arguing that Plaintiff: 1) cannot proceed against Defendants in their official capacities, 2) fails to state a claim upon which relief can be granted, and 3) fails to plead sufficient facts to support his claims.

FN3. Plaintiff's complaint was initially against John Dovery, Giurbino, S. Ryan, G.J. Janda, L.E. Scribener, M.E. Bourland, M. Levin, C. Gray, M. Correa, L.C. Orduno, D. Sawvell, P. Chan, J. Kellerman, Madden, Builtman, Dana, Delgado, M. Hill, T. Ochoa, Hunt, V. Kilpa, M. Zendejas, V. Bach, Vasquez, F. Pascua, Ridgny, Stone, Raske, Greenwood, Nguy-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

en, Garcia, Straton, Din, T. Borem, Raryord, Washington, Woodward, Hopper, and Siota.

FN4. Plaintiff's FAC named John Dovery, M. Levin, M. Correa, D. Sawvell, L.C. Orduno, V. Kilpa, M. Zendejas, M.E. Bourland, L.E. Scribener, G.T. Janda, T. Ochoa, Madden, J. Kellerman, and V. Bach as defendants.

***I. Plaintiff's Claims Against Defendants in Their Official Capacities***

*9 Defendants state that the Plaintiff has named each Defendant in his or her individual and official capacities. Defendants argue that the Plaintiff is barred under the Eleventh Amendment to the United States Constitution from pursuing 42 U.S.C. § 1983 claims for money damages against the state and state employees in their official capacities and that these claims should therefore be dismissed.

The Eleventh Amendment prohibits damage actions against state officials acting in their official capacities. *Will v. Michigan Dept. Of State Police,* 491 U.S. 58, 71, n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1998). However, the Eleventh Amendment "does not bar actions against state officers in their official capacities if the plaintiff seeks only a declaratory judgment or injunctive relief."*Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[FN5]"It is well established that the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority."*Porter v. Bd. of Trustees, Manhattan Beach Unified Sch. Dist.,* 307 F.3d 1064, 1074-75 (9th Cir.2002) (quoting *Cerrato v. San Francisco Community College Dist.,* 26 F.3d 968, 973 (9th Cir.1994); *Ex parte Young,* 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Injunctive relief, however, is available only if there is a "real or immediate threat that the plaintiff will be wronged again."*City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

FN5. Nor does the Eleventh Amendment bar damage actions against state officials in their personal capacities. *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Personal capacity suits seek to impose liability on state officials for acts taken under color of state law. *Id.* at 25-26.In *Hafer,* the Court made clear that the Eleventh Amendment does not shield state officials from allegations that they violated a federal right while acting under color of state law. *Id.* at 29.The Amendment only prohibits damage actions against the "official's office"-actions that are in reality suits against the state itself, rather than its individual officials. *Id.;Will,* 491 U.S. at 71;*Stivers v. Pierce,* 71 F.3d 732 (9th Cir.1995).

In the Ninth Circuit, courts may presume that state officials named as defendants in a 42 U.S.C. § 1983 suit necessarily are sued in their personal capacities even if the complaint does not explicitly mention the capacity in which they are sued. *See Romano v. Bible,* 169 F.3d 1182, 1186 (9th Cir.)*cert. denied,*528 U.S. 816, 120 S.Ct. 55, 145 L.Ed.2d 48 (1999); *Shoshone-Bannock Tribes v. Fish & Game Comm'n.,* 42 F.3d 1278, 1284 (9th Cir.1994); *Cerrato v. San Francisco Community College Dist.,* 26 F.3d 968, 973 n. 16 (9th Cir.1994). Where the plaintiff is seeking damages against a state official, this "necessarily implies" a personal capacity suit because damages against a state official based on acts alleged to have been taken in his official capacity would be barred by the Eleventh Amendment. *Price v. Akaka,* 928 F.2d 824, 828 (9th Cir.1990); *Cerrato,* 26 F.3d at 973 n. 16. As such, Plaintiff's claims for compensatory and punitive damages against the Defendants in their official capacities are barred by the Eleventh Amendment and the Court therefore recommends that Defendants' mo-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

tion to dismiss these claims be GRANTED.

While Plaintiff's claims for injunctive relief against the Defendants in their official capacities are not barred by the Eleventh Amendment, such injunctive relief is available only if there is a "real or immediate threat that the plaintiff will be wronged again."*City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The injunctive relief sought by Plaintiff is a restraining order of an indefinite nature to prevent Defendants' "malignant retaliation." *See* Plaintiff's FAC at ¶ 89.

***10** A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts to create a triable issue of fact as to whether: (1) he was retaliated against for exercising his constitutional rights, (2) the alleged retaliatory action "does not advance legitimate penological goals, such as preserving institutional order and discipline,"*Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir.1994) (per curiam), and (3) the defendants' actions harmed him.[FN6]Here, Plaintiff has not only failed to state which defendants retaliated against him, but also how any alleged retaliation was in any way related to or "caused" by the exercise of a constitutional right. *Soranno's Gasco,* 874 F.2d at 1314. In addition, Plaintiff has failed to show whether or how defendants' actions failed to advance legitimate penological goals or has been otherwise 'chilled' in relation to the exercise of his rights since this is the second § 1983 action the Plaintiff has filed. *Barnett,* 31 F.3d at 815-16*Resnick,* 213 F.3d at 449;*Hines,* 108 F.3d at 269.

FN6.*See Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir.2000); *Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir.1997); *but see Rhodes v. Robinson,* 380 F.3d 1183, 1131 (9th Cir.2004) ("Our cases, in short, are clear that any retribution visited upon a prisoner due to his decision to engage in protected conduct is sufficient to ground a claim of unlawful First Amendment retaliation-whether such detriment "chills" the plaintiff's exercise of his First Amendment rights or not.").

In addition to Plaintiff's vague allegations of harm and retaliation, Plaintiff's request for injunctive relief is inappropriate because Plaintiff has not alleged that an irreparable injury is threatened,[FN7] or provided any proof that Defendants have engaged in a persistent pattern of misconduct.[FN8] Furthermore, Plaintiff was transferred from Calipatria State Prison to Kern Valley State Prison on May 10, 2006, so even if the Court were to assume Plaintiff's vague and conclusory allegations of retaliation are true, Plaintiff is no longer in the custody or control of Defendants. As such, the Court finds Plaintiff's requests for injunctive relief to be unsupported and no longer relevant in light of his transfer and recommends that Plaintiff's request for injunctive relief be DISMISSED.

FN7.*City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)

FN8.*Thomas v. County of Los Angeles,* 978 F.2d 504, 508 (9th Cir.1992); *see also Walters v. Reno,* 145 F.3d 1032, 1048 (9th Cir.1998) ("Injunctive relief is appropriate in cases involving challenges to government policies resulting in a pattern of constitutional violations.").

***II. Whether the First Amended Complaint States a Claim upon Which Relief Can Be Granted***

Defendants second ground in the motion to dismiss argues that Plaintiff's FAC fails to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed if it "appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *N.L. Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."*Scheuer v. Rhoades,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

***11** The rule of liberal construction is important in civil rights cases, particularly when the action has been filed pro se. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Ferdik v. Bozelet,* 963 F.2d 1258, 1261 (9th Cir.1992). In giving liberal interpretation to pro se civil rights complaint, however, the court may not "supply essential elements of the claim that were not initially pled."*Ivey v. Bd. of Regents of the University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982)."Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."*Johnson v. Wells,* 566 F.2d 1016 (5th Cir.1978); *Kennedy v. H & M Landing, Inc.,* 529 F.2d 987 (9th Cir.1976).*See also Keker v. Procunier,* 398 F.Supp. 756, 766 (E.D.Cal.1975). While a complaint need not include evidentiary detail, it must nonetheless allege a factual predicate concrete enough to warrant further proceedings. A plaintiff must set forth factual allegations, either direct or inferential, satisfying each element necessary for the cause of action alleged. Simply parroting the language of a statutory cause of action, without providing some factual support, is not sufficient to state a claim.

To state a valid claim under 42 U.S.C. § 1983, Plaintiff must facts that demonstrate the following: 1) that the acts or omissions of the defendant was intentional; 2) the defendant acted under color of law; 3) the act or omission of the defendant was the cause of the deprivation of the Plaintiff's rights protected by the Constitution or laws of the United States; and 4) the Plaintiff is entitled to recover damages or other relief. *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). A defendant engages in intentional wrongdoing within the meaning of § 1983, if he or she does an affirmative act, participates in another's affirmative act, or fails to perform an act which he or she is legally obligated to do that causes the deprivation of Plaintiff's Constitutional rights. Causation is a required element of a § 1983 claim and the inquiry into causation must be individualized and focus on the duties and responsibilities of each defendant. *Estate of Brooks v. United States,* 197 F.3d 1245, 1248 (9th Cir.1999); *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir.1988).

Plaintiff's complaint alleges claims of deliberate indifference to serious medical needs in violation of the Eighth Amendment, denial of access to the courts, and due process violations under the Fourteenth Amendment. The deprivation of a constitutional right, within the meaning of section 1983, requires an affirmative act, participation in another's affirmative acts, or failure to perform an act which a person is legally required to do, which causes the deprivation of a Constitutional right.[FN9]Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. *Johnson v. Duffy,* 588 F.2d at 744;*Cf. Beverly v. Morris,* 470 F.2d 1356 (5th Cir.1972.) If state law imposes liability upon a public official for the acts of his subordinates, vicarious liability can also be imposed upon him under section 1983. *Hesselgesser v. Reilly,* 440 F.2d 901 (9th Cir.1971).)

FN9.*See*42 U.S.C. § 1983; *Parratt v. Taylor,* 45 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

474 U.S. 327, 328 (1986); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir.1985) (en banc); *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978); *Sims v. Adams,* 537 F.2d 829 (5th Cir.1976).

***12** Defendants contend, and the Court agrees, that Plaintiff's FAC fails to set forth specific factual allegations evidencing a violation of Plaintiff's Constitutional rights by Defendants Levin, Bach, Ochoa, Madden, Janda, Scribner, or Kellerman. *See* Defendants' Motion to Dismiss at 7-9. With regard to Defendant Levin, Plaintiff states in the FAC that Defendant Levin counseled Defendant Orduno about unprofessional conduct and that Plaintiff requested a medical treatment order from Defendant Levin. *See* Plaintiff's FAC at ¶¶ 25-26. Plaintiff's allegations against Defendant Levin fail to demonstrate that Defendant Levin violated Plaintiff's Constitutional rights or caused those right to be violated. With regard to Defendant Bach, Plaintiff merely states that Defendant Bach had control of Plaintiff's personal property at receiving and release, but fails to state any allegations of action or inaction on behalf of Defendant Bach that violated Plaintiff's Constitutional rights. *See id.* at ¶ 46.With regard to Defendants Ochoa, Madden, and Janda Plaintiff's FAC merely states that Plaintiff informed them that he had been denied access to the courts and fails to present any allegations of action or inaction on behalf of these Defendants that violated Plaintiff's Constitutional rights. *See id.* at ¶¶ 48, 54, 74, 76 and 78.With regard Defendant Scribner, Plaintiff informed Defendant Scribner of alleged Constitutional violations such as access to the courts and due process, and Defendant Scribner acted in both cases ordering an officer to insure Plaintiff had access to the law library and ensuring due process by scheduling another classification hearing. *See id.* at ¶¶ 48, 52, 69, 72.As such, Plaintiff's FAC fails to present any allegations of action or inaction on behalf of Defendant Scribner that violated Plaintiff's Constitutional rights. The FAC is similarly insufficient with regard to Defendant Kellerman, as Plaintiff states that Defendant Kellerman failed to inform the classification committee that Plaintiff was denied access to the courts, however, Plaintiff was able to address and inform the committee himself during the hearing. Also the Plaintiff states that he received the memorandum he requested from Defendant Kellerman regarding his placement in administrative segregation. Again, Plaintiff's FAC fails to present any allegations of action or inaction on behalf of Defendant Kellerman that violated Plaintiff's Constitutional rights.

Defendants also contend that Plaintiff's First Amend Complaint fails to state a claim in regard to Defendants Correa and Orduno, however, the Court cannot agree. The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration. *See Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir.1988) (*citing Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).“But not every breach of that duty is of constitutional proportions. In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a ‘deliberate indifference to serious medical needs [FN10] of prisoners.’”*Id.* (quoting *Estelle,* 429 U.S. at 104). Prison officials are deliberately indifferent to a prisoner's serious medical needs when they “deny, delay, or intentionally interfere with medical treatment [FN11]... Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.”*Id.*

FN10. Examples of serious medical needs include “[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.”*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992).

FN11. A prisoner need not prove that he was completely denied medical care. *See Ortiz v. City of Imperial,* 884 F.2d 1312,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

> 1314 (9th Cir.1989). Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment. *See Estelle,* 429 U.S. at 105.

***13** Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person "knows of and disregards an excessive risk to inmate health and safety."*Gibson v. County of Washoe,* 290 F.3d 1175, 1188 (9th Cir.2002) (citing *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In order to know of the excessive risk, it is not enough that the person merely "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [ ] he must also draw that inference."*Id.* If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk. *Jeffers v. Gomez,* 267 F.3d 895, 914 (9th Cir.2001). But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction. *Farmer,* 511 U.S. at 842.

Defendants Orduno and Correa were aware that the Plaintiff underwent knee surgery on October 4, 2005. Plaintiff claims that he was denied medical appliances and prescriptions by Defendant Orduno on December 9, 2005 and February 11 and 27, 2006. Plaintiff contends that on April 11, 2006, Defendant Correa falsified a medical treatment order deleting 99% of Plaintiff's prescribed medical appliances. With regard to Defendants Orduno and Correa, Plaintiff contends that he was denied crutches and use of a wheel chair in spite of his repeated requests and complaints made personally to these Defendants. *See Johnson v. Hardin County, Kentucky,* 908 F.2d 1280, 1284-85 (6th Cir.1990) (finding that a reasonable jury could conclude where there is credible testimony, that a prisoner was denied various prescribed items, including crutches, that defendants were deliberately indifferent to the prisoner's medical needs.).

Since the Court must construe the complaint in the light most favorable to the plaintiff and accepting as true all of material allegations, as well as reasonable inferences to be drawn from them,[FN12] the Court finds the Plaintiff has sufficiently pled his Eighth Amendment claim against Defendants Oduno and Correa to survive Defendants motion to dismiss. As such, the Court recommends that Defendants' motion to dismiss be GRANTED as to Defendants Levin, Bach, Ochoa, Madden, Janda, Scribner, and Kellerman, but DENIED as to Defendants Oduno and Correa.

> FN12.*N.L. Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995).

***III. Fails to Plead Sufficient Facts to Support His Claims***

Defendants contend that Plaintiff's FAC fails to plead sufficient facts to support his claims that he was denied access to the courts or due process.

***A. Access to Courts***

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law."*Id.* at 828.The Court revisited and significantly limited *Bounds* in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).*Lewis* significantly reshaped the right of access to the courts in two respects: the clarification that every such claim must be founded upon actual injury, and the restriction of the scope of the right to only certain types of claims.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

***14** Although *Bounds* itself had "made no mention of an actual-injury requirement,"*Lewis* made clear that actual injury is a "constitutional prerequisite" which not only ensures "serious and adversarial treatment," but also "keeps the courts within certain traditional bounds vis-a-vis the other branches, concrete adverseness or not."*Id.* at 352-53 n. 3."It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."*Id.* at 349.

Further, the right of access is only guaranteed for certain types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging the conditions of confinement. *Id.* at 354.Even among these types of claims, actual injury will exist only if "a non-frivolous legal claim had been frustrated or was being impeded."*Id.* at 353 (emphasis added); *id.* at 353 n. 3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.").FN13

FN13. Even within these boundaries, the right does not require prison officials to provide materials beyond those that would enable a prisoner to bring their grievance before the Court. Although *Bounds* suggested "that the State must enable the prisoner to discover grievances, and to *litigate effectively* once in court,"*Lewis* expressly disavowed such statements. 518 U.S. at 354. Only materials that would ensure meaningful access-the ability to present a claim-are required: "To demand the conferral of sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires."*Id.*

Thus, to state a claim for interference with the right of access to the courts, an inmate must establish that inadequate facilities or interfering regulations have actually frustrated or impeded a non-frivolous attack on either his sentence or the conditions of his confinement. *Id.* at 353.Specifically, Plaintiffs must allege a specific instance in which he was denied the tools needed to litigate in a non-frivolous (1) criminal trial or appeal, (2) habeas proceeding, or (3) section 1983 case challenging the condition of his confinement. *Lewis,* 518 U.S. at 355;*Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989).

Defendants contend that the Plaintiff has failed to state a claim for denial of access to the courts because Plaintiff has not specified what actions were taken by Defendants that deprived him of access to the courts. In the FAC, Plaintiff claims that he was denied access to the courts because he was denied his legal materials and because he received inadequate time in the law library. *See* Plaintiff's FAC at ¶¶ 23-39. However, Plaintiff has failed to specify what actions any of the named Defendants' took that denied him access to the courts or how any of the Defendants were responsible for his lack of law library access or access to his legal materials. Instead, Plaintiff merely reiterates throughout the FAC that he informed several of the Defendants that he was being denied access. *See Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (the non-frivolous nature of the "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). The Court finds that Plaintiff's allegations fall short of the pleading standards necessary to state an access to courts claim. *See*28 U.S.C. § 1915(e)(2).

***15** Defendants also contend that Plaintiff's access to courts claims fail because he has failed show that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

he has suffered any injury. Plaintiff's alleged injury associated with these claims is that he was prejudiced by Defendants actions in not providing access to the law library or his legal materials, which led directly to Plaintiff missing Court imposed deadlines in two other matters that he was litigating. Defendants' argue that in the criminal matter referred to by Plaintiff, Plaintiff was represented by counsel and therefore cannot succeed under a theory of denial of access to the courts.[FN14]Defendants' contend that Plaintiff cannot state a claim for denial of access to the courts based upon a lack of access to the law library or his legal materials because he was already being afforded sufficient access to the courts in the form of an attorney appointed and paid for by the people of the State of California. Defendants' argue that California's act of providing Plaintiff with counsel for his criminal appeal totally forecloses Plaintiff's ability claim to denial of access to the courts because the attorney provided by the State of California is Constitutionally adequate. *Storseth v. Spellamn,* 654 F.2d 1349 (9th Cir.1981).

FN14.*See* Def. Exh. 3 to the Request for Judicial Notice, the Docket in *People v. Jones,* Case No. B174392.

In regard to the civil matter referred to by Plaintiff, the Plaintiff argues that Defendants' actions prevented him from filing objections to the R & R. Defendants' argue that Plaintiff has failed to demonstrate any injury or prejudice suffered as a result of the adoption of the R & R. In support of this argument, Defendants have submitted with their request for judicial notice a copy of the docket in this civil case as well as a copy of the R & R that was adopted. *See* Def. Exh. 2 and 3 to the Request for Judicial Notice, Docket No. 28-3.Defendants' contend that from the docket text of this matter it is evident that the Plaintiff was not prejudiced as a result of being unable to file objections to the R & R that was later adopted, because the moving party remains a defendant in that civil suit and filed an answer shortly after adoption of the R & R, and therefore did not prevail on the motion to dismiss. The Court finds this to be flawed, however, because the R & R was granted in part and denied in part. While it is true that the Plaintiff has failed state how or what objections to the R & R he would have filed absent Defendants' alleged interference, Defendants arguments fail to establish that Plaintiff suffered no injury or prejudice as a result of missing the deadline for filing his objections.

Despite Plaintiff's apparent ability to demonstrate potential injury in his civil action, Plaintiff's vague and conclusory allegations of denial of access to the courts in the FAC fall far short of the pleading standards necessary to state an access to courts claim. Based upon the foregoing, the Court recommends Defendants' motion to dismiss Plaintiff's access to courts claims be GRANTED since these claims fail to state a claim upon which Section 1983 relief can be granted.

***B. Fourteenth Amendment Due Process Claims***

***16** Plaintiff alleges that his Due Process rights were violated in conjunction with his placement and retention in Ad-Seg. The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law.*Hewitt v. Helms,* 459 U.S. 460, 466-68, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. *Hewitt,* 459 U.S. at 466-68. With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.*Sandin v. Conner,* 515 U.S. 472, 481-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Liberty interests created

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."*Id.* at 484.

Plaintiff has alleged no facts that demonstrate that he had a liberty interest in remaining free from confinement in Ad-Seg. *Id .; see also May v. Baldwin,* 109 F.3d 557, 565 (9th Cir.1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence); *Resnick v. Hayes,* 213 F.3d 443, 447 (9th Cir.2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Further, even if plaintiff had alleged facts sufficient to establish the existence of a liberty interest in remaining free from Ad-Seg, plaintiff has not alleged facts sufficient to support his claim he was deprived of the procedural due process protections he was due. In matters of internal security, courts have accorded great deference to the decisions of prison administrators. A lesser quantum of process is due a state prisoner placed in segregation for administrative reasons,[FN15] than is required to punish a prisoner for a disciplinary infraction.[FN16]An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. So long as this occurs, and the decision maker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied. *Hewitt,* 459 U.S. at 476;*see also, Toussaint v. McCarthy,* 801 F.2d 1080, 1101 (9th Cir.1986), *cert. denied,*481 U.S. 1069 (1987).

FN15.*Hewitt,* 459 U.S. at 474.

FN16.*Wolff,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

***17** The court finds that plaintiff received all the notice he was due regarding his placement in Ad-Seg, and all the process he was due regarding his retention in Ad-Seg. *Toussaint,* 801 F.2d 1100-01.Plaintiff is entitled to very limited due process protections under federal law with respect to placement in Ad-Seg. *See Id.*Plaintiff was informed of the reasons for his placement in Ad-Seg via the CDC Form 114-D; plaintiff was given an opportunity to submit information when he was questioned during the various classification hearings. Therefore, the Court finds that the Plaintiff has failed to state a claim for violation of his Fourteenth Amendment rights under the Due Process Clause against any of the Defendants, and therefore recommends that Defendants motion to dismiss Plaintiff's Due Process claims be GRANTED.

### *IV. Qualified Immunity*

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."*Saucier v. Katz,* 533 U.S. 194, 198-99, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). However, "[q]ualified immunity is an affirmative defense that should be pled by the defendant."*Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993). Moreover, because facts necessary to establish an affirmative defense generally must be shown by matter outside the complaint, however, a qualified immunity defense is generally not amenable to a Rule 12(b)(6) motion. *See Morley v. Walker,* 175 F.3d 756, 761 (9th Cir.1999) (holding that, in light of the fact that all allegations in the complaint must be regarded as true on a motion to dismiss, "dismissal [on qualified immunity grounds] for failure to state a claim under 12(b)(6) is inappropriate."). The court is usually "not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant]. Those issues must be resolved at sum-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

mary judgment or at trial."*Id.; see also Groten v. California,* 251 F.3d 844, 851 (9th Cir.2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.") (*citing Jensen v. City of Oxford,* 145 F.3d 1078, 1085 (9th Cir.1998)). As such, the Court hereby recommends that Defendants motion to miss Plaintiff's FAC on the basis of qualified immunity be DENIED as the Court is not equipped at this stage in the proceedings to determine whether qualified immunity will ultimately protect Defendants Orduno and Correa.

***V. Requests for Judicial Notice***

Rule 201 provides for Judicial Notice of Adjudicative Facts as follows:

(a) Scope of rule. This rule governs only Judicial Notice of Adjudicative Facts. Adjudicative facts are those facts that gave rise to and must be proved to resolve the action.

(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

***18** (c) When discretionary. A court may take judicial notice, whether requested or not.

(d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

Pursuant to Rule 201, a court may take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed.R.Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2). Taking judicial notice of findings of fact from another case exceeds the limits of Rule 201. *See M/V Am. Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir.1983) (stating general rule that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").FN17

FN17. Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice. See 21 Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice & Procedure § 5106 (Supp.2001) (stating "courts should distinguish between taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purpose that does not depend on the truth of the facts recited"). In agreement with M/V Am. Queen, other circuits have held that a court may not take judicial notice of findings of fact from a different case for their truth. *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830 (5th Cir .1998); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A ., Inc.,* 146 F.3d 66, 70 (2d Cir.1998); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1082-83 & n. 6 (7th Cir.1997); *Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.),* 54 F.3d 722, 726 (11th Cir.1995); *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994); *Holloway v. Lockhart,* 813 F.2d 874, 878-79 (8th Cir.1987).

Defendants move the Court to take judicial notice of the following court documents under Rule 201: 1) Civil Docket in *Jones v. Ventura County Sherif,* 2:03-cv-6151-DDP-AJW (C.D.Cal., May 15, 2007); 2) R & R, *Jones v. Venture County Sheriff,* 2:03-cv-6151-DDP-AJW (C.D.Cal., August 8, 2005); and 3) Docket, The *People v. Jones,* Case

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

No. B174392.Defendants contend that matters subject to judicial notice under Federal Rule of Evidence 201 may be considered in deciding Rule 12(b)(6) motions, and official records and reports may be so noticed and considered without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.[FN18]

FN18. On a motion to dismiss, a court may take judicial notice of facts outside the pleadings. *Mack v. So. Bay Beer Distributing, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986), overruled on other grounds by*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir.1956). The court may properly look beyond the complaint to matters of public record and doing so does not convert a F.R. Civ. P. 12(b)(6) motion to a summary judgment motion.*Mack*, 798 F.2d at 1282;*see Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979).

Defendants have submitted the above documents for judicial notice for determination of: 1) whether or not Plaintiff has suffered injury as a result of missing Court imposed deadlines, and 2) that Plaintiff was represented by counsel in the criminal matter. The Court finds Defendants' request for judicial notice of Exhibits 1 and 2 for the purpose of establishing that the Plaintiff did not suffer injury as a result his inability to file objections to the R & R due to Defendants' alleged interference with his access to the law library and legal materials to be inappropriate under Rule 201. Defendants' argue that since the moving party remained a defendant in the case after the adoption of the R & R, no injury was suffered by the Plaintiff. However, since the R & R was granted in part and denied in part, the question of whether or not the Plaintiff suffered injury is subject to reasonable dispute and therefore not appropriate for judicial notice under Rule 201. The fact that the moving defendant remained a party with regard to some, but not all of Plaintiff's claims, does nothing to change this. Under Federal Rule of Evidence 201(b), this Court cannot take judicial notice of a fact that is subject to reasonable dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001).

***19** The Court finds Defendants request for judicial notice with regard to Exhibit 3 for the purpose of establishing that the Plaintiff was represented by counsel in this particular criminal case would be appropriate under Rule 201(b), as this is a fact that is capable of accurate and ready determination and whose accuracy cannot reasonably be questioned. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994) (a court "may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings' ") (*quoting Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir.1992)); *San Luis v. Badgley*, 136 F.Supp.2d 1136, 1146 (E.D.Cal.2000) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue") (quoting *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992)).

As such, the Court recommends that Defendants' request for judicial notice of documents listed as Exhibits 1 and 2 for the sole purpose of establishing the presence or absence of injury to the Plaintiff be DENIED and Defendants' request for judicial notice of the document listed as exhibit 3 for the sole purpose of establishing Plaintiff was represented by counsel in that particular criminal matter be GRANTED. As such, Defendants' Exhibit 3 to the request for judicial notice will be lodged with the Court and become part of the record in this case.

Plaintiff has also filed a request for judicial notice [Doc. No. 41] of numerous attached exhibits. These exhibits consist of prison records or correspondence

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

between Plaintiff and prison officials. Plaintiff's requests that the Court take judicial notice of the facts contained in these exhibits. As set forth above, the Court cannot take judicial notice of a fact that is "subject to reasonable dispute." Federal Rule of Evidence 201(b). Plaintiff has failed to demonstrate that these documents, consisting of medical records, an accommodation chrono, or legal mail are maters of public record subject to judicial notice. *See United States v. Burch,* 169 F.3d 666, 672 (10th Cir.1999) (not proper for court to take judicial notice of disputed facts contained in hearsay document). The documents pertaining to exhaustion are part of a state administrative proceeding and can be judicially noticed as public records. *Walker v. Woodford,* 454 F.Supp.2d 1007, 1022-23 (S.D.Cal.2006) (citing *U.S. v. Ritchie,* 342 F.3d 903, 909 (9th Cir.2003); *see also Interstate Nat. Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir.1953) ("Courts may take judicial notice of some public records, including the "records and reports of administrative bodies."). For these reasons, the Court RECOMMENDS that Plaintiff's request to take judicial notice be GRANTED as to Exhibits 2, 3, 4, 7, 8, 9, 10 and 11 and DENIED as to all other exhibits.

***Conclusion***

***20** For the reasons set forth above, the Court hereby recommends that Defendants' motion to dismiss be GRANTED as to Defendants Levin, Bach, Ochoa, Madden, Janda, Scribner, and Kellerman, and GRANTED as to Plaintiff's due process and access to courts claims, but DENIED as to Defendants Oduno and Correa. Defendants Kilpa, Zendejas, Sawvell and Dovery have not been served in this matter and were not parties to the motion to dismiss. The Court recommends that Plaintiff's motion to quash Defendants' motion to dismiss be DENIED and the Court instead construes this motion as an opposition to the motion to dismiss. The Court recommends Defendants request for judicial notice be GRANTED as to Exhibit 3 and DENIED as to Exhibits 1 and 2 and that Plaintiff's request for judicial notice be GRANTED as to Exhibits 2, 3, 4, 7, 8, 9, 10 and 11 and DENIED as to all other exhibits.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties ***on or before March 6, 2008.*** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed ***on or before March 19, 2008.*** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir.1998); *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

S.D.Cal.,2008.
Jones v. Dovery
Slip Copy, 2008 WL 733468 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.