**H**

Bradshaw v. Tri-County of Southwestern Michigan Snowmobile Club
W.D.Mich.,1994.
Only the Westlaw citation is currently available.

United States District Court, W.D. Michigan, Southern Division.
June BRADSHAW, Personal Representative of the Estate of James H. Bradshaw, III, Deceased, Plaintiff,
v.
TRI-COUNTY of SOUTHWESTERN MICHIGAN SNOWMOBILE CLUB; Four Flags Snowmobile Club; and Milton Preston, Defendants.
**No. 1:93-CV-834.**

Dec. 20, 1994.

Jeffrey Scort Cook, Lopatin, Miller, Freedman, Bluestone & Herskovic, P.C., Detroit, MI, for plaintiffs.
Gary P. Bartosiewicz, Piatt, Bartosiewicz, Tiderington & Kimbrel, PC, Kalamazoo, MI, for Tri-County of Southwestern Michigan Snowmobile Club, Jointly and Severally defendants.
Charles F. Ammeson, Troff, Petzke & Ammeson, St. Joseph, MI, for Four Flags Snowmobile Club, Jointly and Severally defendant.
Gary P. Bartosiewicz, Piatt, Bartosiewicz, Tiderington & Kimbrel, PC, Kalamazoo, MI, David S. York, York & Miller, PC, Kalamazoo, MI, for Milton Preston, Jointly and Severally, defendant.

*OPINION*

ROBERT HOLMES BELL, District Judge:
*1 James H. Bradshaw, III, died in a snowmobile accident in Cass County, Michigan. Plaintiff June Bradshaw, personal representative of the Estate of James H. Bradshaw, III, filed this negligence action against Milton Preston, the owner of the property, and five snowmobile clubs allegedly responsible for establishing, marking and grooming the snowmobile trail. Three of the clubs, Snow Busters, Blizzard Brigade and Blossomland Snowmobile Club of Southwestern Michigan, have been dismissed by stipulation of the parties.

This matter is currently before the Court on Defendant Preston's motion for summary judgment. Preston alleges that this negligence action is barred by the Michigan Recreational Use Act, M.C.L.A. 300.201(1); M.S.A. § 13.1485(1). Defendant Tri-County of Southwestern Michigan Snowmobile Club has joined in the motion. Plaintiff has now filed a motion to amend complaint to assert gross negligence and willful and wanton misconduct on the part of the defendants.

I.

The relevant facts are not in dispute. Defendant Preston owns a 199 acre parcel of farm property in Dowagiac, Cass County, which he uses for dairy farming. In 1985, Defendant Four Flags Snowmobile Club contracted with Preston to use a portion of the property for approximately 1 mile of snowmobile trails. Since 1985 the snowmobile club has paid Preston $200 a year for the trail permit. The trail permit provides that the "right-of-way snowmobile route shall be open to the general public for snowmobile use."

When the trail was originally established there was a woven wire fence parallel to the trail. In 1990 Preston replaced the woven wire fence with an electric wire fence.

On the night of February 28, 1993, James H. Bradshaw, III, an Indiana resident, was snowmobiling on the Preston property for his first time. There is some evidence that Bradshaw was not travelling on the snowmobile trail just prior to the accident. However, for purposes of this motion, the Court will assume Plaintiff's assertion that he died when he failed to negotiate a 90-degree turn on the snowmobile trail and traveled between 6 and 8 feet off the trail into the wire fence. Bradshaw was not a

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT 1

member of any of the Defendant snowmobile clubs, and did not pay any consideration to either Preston or the snowmobile clubs for using the property.

II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

***2** Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587. Nevertheless, Plaintiff must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* at 586. The mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

III.

The issue raised by Defendant Preston's motion for summary judgment is whether Plaintiff's negligence action is barred by Michigan's recreational land use statute ("RUA"), M.C.L.A. 300.201(1); M.S.A. § 13.1485(1), which provides in pertinent part:

[A] cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant or lessee of the land a valuable consideration for the purpose of ... snowmobiling, or any other outdoor recreational use or trail use, with or without permission, against the owner, tenant or lessee of the land unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee.

In this case there is no question that the purpose for going on the land was for snowmobiling, which is one of the activities covered by the RUA. Plaintiff contends, however, that the RUA is no bar to this action because (1) Preston was paid valuable consideration for use of his property for snowmobiling; and (2) the electric fence removed the land from its natural state, and such human intervention defeats the protection of the RUA.

*1. Consideration*

In this case it is undisputed that Bradshaw paid no consideration, either to Preston or to any of the snowmobile clubs for use of the snowmobile trail. Preston, however, did receive $200 annually from the snowmobile clubs for the permit to use his property for snowmobiling. Because the trail permit provided that the snowmobile route would be open to the general public for snowmobile use, Plaintiff contends he was a third party beneficiary of the permit. Accordingly, Plaintiff contends that consideration was paid, and that the RUA, by its terms, does not apply.

As a preliminary matter, it is well-settled under Michigan law that one's status as a public invitee does not preclude application of the RUA. *James v. Leco Corp.*, 170 Mich.App. 184;427 N.W.2d 920 (1988). Accordingly, the fact that Bradshaw was on the trail pursuant to a trail permit which provided that the trail would be open to the general public does not take this case outside the RUA.

Neither can Plaintiff show that the "valuable con-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

sideration" exception to the RUA applies. The RUA provides that "a cause of action shall not arise for injuries to a person who is on the land of another without paying to the owner, tenant or lessee of the land a valuable consideration ...." The focus of the RUA is on payment by the injured party, not on receipt of consideration by the landowner.

*3 Michigan cases have uniformly held that "valuable consideration" under the RUA must be in the form of a specific fee for the use of a particular recreational area in question. For example, in *Syrowik v. City of Detroit,* 119 Mich.App. 343, 347;326 N.W.2d 507 (1982), where the plaintiff was injured tobogganing in a city park, the court held that the plaintiff's status as a taxpayer was not enough to bring him within the statutory exception. 119 Mich.App. at 346. Similarly, payment of a parking fee for entry to a park is not valuable consideration under the RUA and does not deprive the park of immunity. *Bessler v. Huron-Clinton Metropolitan Authority,* 180 Mich.App. 397;447 N.W.2d 811 (1989).*See also Schiller v. Muskegon State Park,* 153 Mich.App. 472;395 N.W.2d 75 (1986), *app. denied,*428 Mich. 874 (1987).

In *Lebeter v. United States,* 750 F.Supp. 322 (N.D. Ill. 1990), the court held that plaintiff's suit for injuries sustained while canoeing in a national forest were barred by Michigan's recreational use statute. The court rejected plaintiff's argument that his parents' payment of federal taxes constituted "valuable consideration" under the RUA. *Id.* at 324.

In *James* the court rejected plaintiffs' argument that their decedents' visit to defendant's property conferred an anticipated a monetary benefit on defendant. 170 Mich.App. at 188.

Notwithstanding any anticipated monetary benefit that defendant may or may not have realized, no valuable consideration was actually paid to defendant by the decedents for use of the property. Therefore, this case does not fall outside of the reach of the statute.

*Id.*

Based upon the foregoing authorities the Court finds as a matter of law that Preston's receipt of money from the clubs does not satisfy the "valuable consideration" exception to the RUA.

*2. Relatively Natural State*

Plaintiff's second basis for challenging application of the RUA is that the presence of the electric wire fence removed the land from its natural state and took it outside the scope of the RUA.

The RUA applies to large tracts of open, vacant land "in a relatively natural state." *Wymer v. Holmes,* 429 Mich. 66, 79-80;412 N.W.2d 213 (1987)."[T] he statute was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA."*Id.* at 79. The RUA does not specify a minimum size for the tract of land involved. Instead, the act was designed to limit owner liability on large tracts of undeveloped land which are suitable for outdoor recreational use and are difficult to defend from trespassers and to make safe for invited persons engaged in recreational activities. *Id.*

The RUA does not apply where the land in question has a significant artificial condition created by the intervention of human action on the landscape. Thus, in *Wymer* the Court held that the presence of a man-made pond and a mand-made lake on the tracts at issue took them out of the RUA. Similarly, in *Cypret v. Lea,* 173 Mich.App. 222;433 N.W.2d 413 (1988), *app. denied,*433 Mich. 871 (1989), the RUA was held inapplicable where a man-made gravel pit had "dramatically changed the features of the land."*Id.* at 229.

*4 Not every human action on a parcel of property will render the RUA inapplicable. "Certainly the RUA has not been rendered inapplicable solely because there has been some human action on the land, as such a conclusion would ignore the Su-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

preme Court's use of the modifier "relatively' in stating that the land must be in a natural state."*Cypret,* 173 Mich.App. at 228-29."The focus is on the use of the land and whether it remains in a relatively natural state or has been developed and changed in a manner incompatible with the intention of the act."*Wilson v. Thomas L. McNamara, Inc.,* 173 Mich.App. 372, 377;433 N.W.2d 851 (1988), *app. denied,*433 Mich. 872 (1989).

The intention of the RUA is to open up and make available vast areas of vacant but private lands for recreational use by the general public. *Estate of Thomas v. Consumers Power Company,* 58 Mich.App. 486, 495-96;228 N.W.2d 786,*aff'd in part, rev'd in part,*394 Mich. 459;231 N.W.2d 653 (1975). This includes farmland. In *Ellsworth v. Highland Lakes Development Associates,* 198 Mich.App. 55, 57;498 N.W.2d 5,*app. denied,*443 Mich. 875;506 N.W.2d 872 (1993), the court held that the RUA "clearly" applied to a 97-acre parcel of former farmland. The mere presence of homes near the large, undeveloped tract of land did not make the land "suburban." *Id.* at 60.

This Court finds it surprising that it has not been able to find any cases dealing with the issue of farm fences under the RUA. The closest analogy the Court has found in the case law is guy wires holding up utility poles on a large tract of land used for snowmobiling. In *Thomas* plaintiffs' decedents died on land owned by Saginaw County Agricultural Society when their snowmobile came in contact with a Consumers Power guy wire. The Michigan Supreme Court affirmed the court of appeal's determination that the utility poles and guy wires, while undoubtedly man-made, did not take the property outside the scope of the RUA. 394 Mich. at 460.

Fences are regular features of farm property. They do not "dramatically" change the features of the land. Like utility poles and guy wires, farm fences do not change the land in a manner incompatible with the intention of the act. Were the Court to accept Plaintiff's characterization of fences as significant artificial conditions, then almost no farm property would ever qualify under the RUA. This certainly would not be consistent with the legislative intent. The Court is satisfied that the existence of farm fences does not render the RUA inapplicable.

IV.

Defendant Tri-County has joined in Defendant Preston's motion for summary judgment. Its motion, however, raises an additional issue for the court's consideration.

The RUA specifically applies to owners, tenants or lessees of the property. Defendant Tri-County claims it is protected under the RUA as a lessee of the property. Although Plaintiff alleged in her original complaint that the clubs "leased" the premises, she now contends that the trail permit is only a license, and that therefore the clubs do not come within the protection of the act, and can be found liable on a finding of negligence alone.

***5** Michigan cases have indicated that the RUA is not concerned with the strict legal relationship of the defendant to the property at issue. For example, in *Wilson,* 173 Mich.App. at 377, the court stated that "[w]hile the act does look to the size of the tract for purposes of deciding whether the act applies to a particular claim, it is not concerned with the ownership of the tract."The two central issues to the determination of the act's application are the injured person's purpose for going onto the land and the character of the land. *Id.*"Whether or not one is the 'owner, tenant, or lessee' of the lands relates to the issue of whether one is a proper defendant in the action."*Id.*

In *Thomas* the plaintiffs argued that the RUA does not apply to an easement holder because he has no right in the property as an "owner, tenant or lessee." 58 Mich.App. at 491. The court of appeals considered the purpose of the statute:

The act in question has the undoubted purpose of furthering recreational activities in Michigan by

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

making certain areas available for such purposes while clearly restating the common-law liability of owners to those who come gratuitously upon their land. Under these circumstances and to carry out the undoubted intention of the legislature, it would seem the statute should be liberally construed. Courts should lean toward that construction which will give the statute force and validity, not to that construction which would nullify it.

*Id.* at 492. Applying this reasoning, the court of appeals concluded that as holder of an easement across the land in question, Consumers Power Company was an "owner of property" within the meaning of the statute. *Id.* at 493. The Michigan Supreme Court affirmed application of the RUA to the Consumers Power, the easement holder. *Thomas,* 394 Mich. at 460.

There is no question that Tri-County is a proper defendant in this action. Plaintiff has alleged that Tri-County and Four Flags established, marked and maintained the snowmobile trail.

Excluding the holders of a trail permit from the protection of the RUA would not further the purposes of the act. The act is intended to further recreational activities by limiting the liability of those who make it possible. That the Michigan legislature has an interest in promoting the use of farmland for snowmobiling, and in securing trail permits permitting snowmobiling on private land, is demonstrated by the enactment of the snowmobile grant program found at M.C.L.A. § 257.1504a; M.S.A. 9.3200(4a).

Under the liberal construction afforded the RUA, the Court concludes that as holder of a "trail permit" across the land in question, Tri-County was a "lessee" of the property within the meaning of the RUA, and is protected by the RUA from an action for negligence.

Plaintiff's complaint alleges only negligence. Because, by its terms, the RUA only permits liability to be imposed where gross negligence is shown or where defendant is guilty of willful and wanton misconduct, the Court concludes that the negligence action against defendants Preston and Tri-County is barred by the RUA, and that defendants Preston and Tri-County are entitled to summary judgment.[FN1]

V.

***6** Plaintiff has filed a motion to amend complaint to allege gross negligence and willful and wanton misconduct against Defendants Preston, Tri-County and Four Flags. In support of her motion she contends that newly discovered evidence regarding the change from a woven to an electric fence after the trail permit was entered into and the re-routing of the snowmobile trail two months prior to the accident support allegations of gross negligence and willful and wanton misconduct.

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Leave to amend need not be granted where amendment would be futile. *Robinson v. Michigan Consolidated Gas Co.,* 918 F.2d 579, 591 (6th Cir. 1990).

Plaintiff alleged in her original complaint that the fence was an electric wire fence. Because the record indicates that the clubs marked the fence, there is no question that they had knowledge of the change. Under these circumstances, the fact that the fence was a woven fence at the time the trail permit was entered into is of no consequence. It adds nothing to the original complaint.

The second factor Plaintiff points to in support of her motion to amend is that two months prior to Bradshaw's death, Preston and representatives of the snowmobile clubs re-routed the snowmobile trail to run under the electric fence. There is no question of fact, however, that this change was in a portion of the trail further south than where Bradshaw was injured. Because the accident occurred in a location before the fence crossed over the trail,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

this change in the trail was not a proximate cause of the accident. The re-routing of the trail did not contribute to the accident and adds nothing to the allegations of the original complaint.

The Michigan Supreme Court has recently defined gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."*Jennings v. Southwood,* 446 Mich. 125, 135-36;521 N.W.2d 230 (1994). Under Michigan law there is a three-prong test for willful and wanton misconduct:

(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

*Burnett v. City of Adrian,* 414 Mich. 448;326 N.W.2d 810 (1982)(quoting *Gibbard v. Cursan,* 225 Mich. 311, 322;196 N.W. 398 (1923)).*See also Jennings,* 446 Mich. at 137-38.

The first and second elements amount to no more than ordinary negligence. It is the third element which raises the act to the level of willful and wanton misconduct. *Burnett,* 414 Mich. at 455-56. "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does."*Id.* at 455.

*7 Plaintiff's original complaint charges negligence in the location of the trail near the wire fence and the failure to have adequate markings and warnings on the trail. Plaintiff contends that Defendants knew or should have known that some snowmobilers would not be able to negotiate the 90-degree turn and would foreseeably travel six to eight feet off of the trail into the wire fence, which could do great damage. The only significant difference between Plaintiff's original and her proposed amended complaint is the addition of the "gross negligence" and "wilful and wanton misconduct" language.

Plaintiff cannot avoid the application of the RUA merely by pleading the key words. "Mere negligence cannot be cast as 'wilfulness' simply for the purposes of bringing a complaint."*Ellsworth,* 198 Mich.App. at 61.

In *Thomas* the Supreme Court determined that the plaintiffs' complaints sufficiently stated facts giving rise to a cause of action based on gross negligence so as to withstand summary judgment. 394 Mich. at 460. In that case the plaintiffs had clearly alleged that the defendants knew of Consumer Power's unmarked guy wires and the threat therefrom to snowmobilers permissively using the land, that unmarked guy wires in areas exposed to traffic were a violation of an industry safety code, and that the defendants could have avoided the resulting harm in several ways and failed to do so. *Id.* at 460-61.

Unlike *Thomas,* this case is governed by federal summary judgment standards which require the court to evaluate not only the pleadings, but also the proofs to determine whether there is a genuine need for trial. Those proofs reveal that unlike the open land used for snowmobiling in *Thomas,* in this case the snowmobiling was limited to a clearly defined trail. The proofs also reveal that both the trail and the electric wire fence were marked.

In this case there are no allegations or evidence of any defect in the snowmobile trail itself. The accident did not occur on the groomed trail. Using Plaintiff's estimate, the accident occurred at least 6 to 8 feet off the trail. Off the trail in an agricultural area such as this, one could reasonably expect to come across all kinds of obstacles including trees, stumps, rocks, abandoned farm equipment and fences.

In *Montgomery v. Department of Natural Resources,* 172 Mich.App. 718, 721;432 N.W.2d 414

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

(1988), Plaintiff's complaint alleged that defendant negligently and carelessly failed to place warning signs and stop signs along the snowmobile trail and at the intersection where the accident occurred; that the trail was negligently and carelessly designed, causing snow banks to accumulate; and that defendant failed to plow the snow properly. The court held that these allegations, while falling within the ambit of ordinary negligence, do not rise to the standard imposed for willful and wanton misconduct. *Id.*

The allegations in Plaintiff's original and amended complaint are remarkably similar to the allegations in *Montgomery.* The allegations may fall within the ambit of ordinary negligence, but like the allegations in *Montgomery,* they fail to rise to the standard of gross negligence or willful and wanton misconduct. All would agree that Plaintiff's decedent died under terribly unfortunate circumstances. Nevertheless, there is no evidence in this case from which a jury could reasonably find that Defendants engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted, that they intended harm, or that they showed such indifference to whether harm would result as to be the equivalent of a willingness that it would.

***8** Because the evidence shows no more than possible negligence on the part of Defendants, the Court finds that amendment of the complaint to add allegations of gross negligence and willful and wanton misconduct would be futile. Accordingly, Plaintiff's motion to amend is denied and summary judgment is granted to Defendants Preston and Tri-County. An order consistent with this opinion will be entered.

FN1. While it appears from the record that Four Flags is in the same position as Tri-County and would be entitled to judgment as well, the Court has not received a dispositive motion from Defendant Four Flags, so the issue is not properly before the Court.

W.D.Mich.,1994.

Bradshaw v. Tri-County of Southwestern Michigan Snowmobile Club
Not Reported in F.Supp., 1994 WL 841291 (W.D.Mich.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.